The bill prays an injunction against the defendant for an alleged violation of a covenant contained in her deed, whichinter alia provides "that no stable or any outbuildings of any kind shall be erected on said lots." Complainants and defendant are adjoining property owners. Their respective lands are part of a tract comprising four hundred and twenty lots known as "East Orange Park," owned and developed by Philip J. Bowers 
Company. Deeds to various grantees of the common grantor contain restrictions pursuant to a general plan adopted for the development and improvement of the tract. All lots similarly located were treated alike. The erection of garages on inside lots was permitted. No provision was made for the erection of garages on corner lots. Deeds for corner lots contained the restriction sub judice. A neighborhood or community scheme was ostensibly contemplated. The erection of a dwelling house only on corner lots was planned. Where, as in the case sub judice, the restrictions *Page 226 
are based upon a uniform scheme they will be enforced in equity. In Dettsloff v. Hockstetter, 96 N.J. Eq. 391 (at p. 393), the court says: "The theory upon which those community agreements are enforced is that there has accrued to everybody the rights as are defined in these uniform restrictive covenants, and that it is inequitable upon the part of any person after entering into a general scheme of that kind to repudiate their agreement and violate the covenants in a manner that they had agreed not to do. A suit of this nature is not a suit for the enforcement of a covenant, strictly speaking. The written covenants are all made with the vendor who sold these properties; they do not run in terms to grantees of the vendor, they are in form personal to the vendor, and this is not a suit by the vendor for the enforcement of these covenants as such, it is a suit by one of the purchasers against other purchasers to compel them to observe good faith in this general scheme, and it is the uniform covenants to which all have agreed, which we turn to to ascertain the scope and tenor and character of that general scheme, and it is from the general scheme defined by these covenants that the equity arises as distinguished from a suit to enforce specifically a covenant by a person to whom the covenant has been made." The complainants, not being a party to the defendant's deed, and having therefore no privity, either of legal estate or contract, with the defendant, have only an equitable right to enforce the covenant in question, and such right depends upon the existence of the general plan for the development and improvement of the entire "East Orange Park" tract by a uniform scheme, which is manifest herein, and the insertion of covenants in the deeds of purchasers, intended for the benefit of each purchaser and to which each purchaser with notice was subject. Morrow v. Hasselman, 69 N.J. Eq. 612 (atp. 614). The fact that restrictions contained in deeds of various grantees varied in different sections of the tract in accordance with the designs of the promotors for the character of such sections respectively, does not affect the integrity of the planned neighborhood or community *Page 227 
scheme. Sanford v. Keer, 80 N.J. Eq. 240, 245. A small number of violations of restrictive covenants which in no substantial way affect the property of the complainants will not constitute a bar to complainants' relief by way of enforcement of the restrictive covenant in question. Polhemus v. DeLisle, 98 N.J. Eq. 256.
As stated in the above-cited case: "The small number of such violations on a large tract is really an indication of the general adherence to the general plan of the whole tract." The defendant claims that several garages were built in violation of covenants prohibiting same, that complainants did not object thereto and therefore they are estopped from enforcing the covenant against the defendant. It has not been satisfactorily established herein that the complainants had knowledge of any such violation of restrictive covenants. Even if they had knowledge thereof it was not incumbent upon them to seek the enforcement of the covenant throughout the entire tract. There is no proof herein of any such violations in close proximity to or materially affecting complainants' property. The complainants promptly protested to defendant against infringement by her of the restrictive covenant in question by the erection of a garage upon her property upon their being apprized of her intention to erect such garage, and they also made known to the defendant their intention to compel her observance of such covenant by suit, if necessary. Notwithstanding such protest and notice the defendant proceeded with the erection of the garage upon her property, and it has been completed and is now in use by the defendant. The completion of the garage under such circumstances must be considered to have been at the defendant's risk of being obliged to remove same upon the court determining that the erection thereof was violative of the restrictive covenant in question. Morrow v. Hasselman, supra (at p. 619). InLaverack v. Allen, 2 N.J. Mis. R. 637; 130 Atl. Rep. 615, it was held: "Defendant grantee, erecting building on lot with knowledge of complainants' right under restriction in her deed, proceeded at her peril, and was precluded *Page 228 
from complaining that complainants did not object to the erection of such building." The covenant in question, in so far as it prohibits the erection of a stable, will not prohibit the erection of a garage. Bourgeois v. Miller, 89 N.J. Eq. 285;Hilsinger v. Schwartz, 99 N.J. Eq. 288. The language of covenant following the word stable, "or any outbuilding of any kind," is broad enough to comprehend the erection of any building whatever additional or appurtenant to the dwelling house. Anoutbuilding within the meaning of the covenant sub judice
comprehends a building adjoining or belonging to the dwelling house, something used or intended for use in connection therewith. Words and Phrases (2d Series) 838. The termsoutbuilding and outhouse are frequently used interchangeably.46 C.J. 1156. The supreme court of Connecticut held a garage on a residence lot, constructed apart from the dwelling house, to be an "outhouse," within a restrictive covenant forbidding the erection or maintenance of any "outhouse" on land conveyed.Basset v. Pepe, 110 Atl. Rep. 56. It is urged in behalf of the defendant that under the familiar maxim of ejusdem generis
the outbuildings prohibited by the covenant in question must be those similar to a stable. Defendant concedes that if the words "any kind whatsoever" had been used in the covenant, it would include buildings other than and dissimilar to a stable (Buchanan Smock Lumber Co. v. East Jersey Coast Water Co.,71 N.J. Law 350), but urges in the absence of the wordwhatsoever the rule of ejusdem generis should control. In my judgment neither the maxim ejusdem generis, nor the much broader maxim noscitur a sociis are applicable to the covenantsub judice.
I will advise a decree for the complainants. *Page 229